**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| BRIAN CIOTTI<br>99 Williams St.<br>Winfield, PA 17889<br><br>Plaintiff,<br><br>v.<br><br>MONARCH MANAGEMENT GROUP, INC.<br>32 Whisper Creek Dr. Ste. 1<br>Lewisburg, PA 17837<br><br>Defendant. | CIVIL ACTION<br><br>No.:____________________<br><br>**JURY TRIAL DEMANDED** |

**CIVIL ACTION COMPLAINT**

Plaintiff, Brian Ciotti, by and through his undersigned counsel, hereby avers as follows:

## I. INTRODUCTION

1. Plaintiff has initiated this action to redress violations by Monarch Management Group, Inc. ("Defendant") of the Americans with Disabilities Act ("ADA" – 42 U.S.C. §§ 12101 *et. seq.*) and the Pennsylvania Human Relations Commission ("PHRA").[1] Plaintiff was unlawfully terminated by Defendant and he suffered damages more fully described/sought herein.

## II. JURISDICTION AND VENUE

2. This Court, in accordance with 28 U.S.C. § 1331, has jurisdiction over Plaintiff's claims because this civil action arises under laws of the United States.

[1] Plaintiff's claims under the PHRA are referenced herein for notice purposes. He is required to wait one full year before initiating a lawsuit from date of dual-filing with the EEOC. Plaintiff must file his lawsuit in advance of same because of the date of issuance of his federal right-to-sue-letter under the ADA. Plaintiff's PHRA claims, however, will mirror his federal claims.

3. This Court may properly maintain personal jurisdiction over Defendant because Defendant's contacts with this state and this judicial district are sufficient for the exercise of jurisdiction over Defendant to comply with traditional notions of fair play and substantial justice, satisfying the standard set forth by the United States Supreme Court in *International Shoe Co. v. Washington*, 326 U.S. 310 (1945) and its progeny.

4. Pursuant to 28 U.S.C. § 1391(b)(1) and (b)(2), venue is properly laid in this district because all of the acts and/or omissions giving rise to the claims set forth herein occurred in this judicial district, and in addition, Defendant is deemed to reside where it is subject to personal jurisdiction, rendering Defendant a resident of the Middle District of Pennsylvania.

5. Plaintiff is proceeding herein under the ADA and has properly exhausted his administrative remedies with respect to such claims by timely filing a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") and by filing the instant lawsuit within ninety (90) days of receiving a notice of dismissal and/or right to sue letter from the EEOC.

## III. PARTIES

6. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

7. Plaintiff is an adult individual, with an address as set forth in the caption.

8. Defendant is a property management company that provides property management services for affordable multifamily properties in Pennsylvania.

9. At all times relevant herein, Defendant acted by and through its agents, servants and employees, each of whom acted at all times relevant herein in the course and scope of their employment with and for Defendant.

## IV. FACTUAL BACKGROUND

10. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

11. Plaintiff was hired by Defendant on or about May 1, 2023 and worked as an Assistant Finance Manager.

12. Plaintiff was interviewed and hired by Defendant's Vice President, Michael Kearney and Defendant's Vice President of Operations, Heather Emminger.

13. At all times relevant herein, Plaintiff was supervised by Defendant's Vice President of Financial Operations, Melissa Zartman.

14. Plaintiff worked for Defendant for approximately four (4) weeks before he was unlawfully terminated on or about May 26, 2023, for the reasons discussed *infra*.

15. During Plaintiff's employment with Defendant, he was a very hard-working and dedicated employee who was not subjected to a history of progressive discipline.

16. Defendant's employees were placed on a six (6) month probationary period. Plaintiff asked Zartman several times, in the weeks leading up to his termination, how Plaintiff had been performing and was reassured that his performance was satisfactory.

17. At no point during the weeks leading up to Plaintiff's termination, did Defendant's management, including Zartman, express any concerns pertaining to Plaintiff's performance.

18. Plaintiff has and continues to suffer from ADA-qualifying disabilities, including but not limited to, diabetes and hypertension among other complications/conditions.

19. Plaintiff's disabilities, at times, substantially limit his ability to engage in some daily life activities including, but not limited to, working; as well as limit his major bodily

functions, including but not limited to, normal functions of his endocrine and circulatory systems.

20. Plaintiff apprised Defendant's management about his aforesaid health conditions prior to beginning his employment with Defendant.

21. Despite Plaintiff's aforesaid health conditions, Plaintiff was able to perform the essential functions of his position. At times, however, Plaintiff required some reasonable medical accommodations (discussed further *infra*).

22. On or about the evening of May 11, 2023, Plaintiff began suffering from stroke-like symptoms (complications related to Plaintiff's disabilities).

23. As a result of Plaintiff's disabilities and associated complications, he was admitted to the hospital the same day. Plaintiff was released from the hospital on or about May 18, 2023.

24. Defendant's management, including Zartman, were kept abreast throughout Plaintiff's stay in the hospital. Plaintiff apprised Defendant's management, including Zartman, that Plaintiff's physician cleared his to return to work part time for a short period of time, starting on or about May 24, 2023, with restrictions including but not limited to, lifting restrictions.

25. Plaintiff further apprised Defendant's management that he was cleared to return full-time on or about May 30, 2023, without restrictions. At no point during Plaintiff's hospital stay did Defendant's management indicate that Plaintiff's position was at risk.

26. On or about May 24, 2023, Plaintiff returned part time to work and although he was improving, needed a few additional days (a reasonable accommodation under the ADA) to care for and treat his health conditions and associated complications.

27. As Plaintiff was continuing to experience complications regarding his disabilities, Plaintiff again sought medical treatment.

28. Plaintiff apprised Defendant's management that he was experiencing complications on the same day (on or about May 24, 2023) and requested to leave early, another reasonable accommodation.

29. Defendant's management granted Plaintiff's accommodation to leave early and informed Plaintiff that if he needed the rest of the week off, to "take it."

30. When Plaintiff contacted Zartman to confirm that he was still approved to take time off, Zartman assured Plaintiff that Kearny approved his time off for the rest of the week.

31. After Defendant's management approved Plaintiff's accommodation request, Zartman informed Plaintiff that Plaintiff would be speaking to her and Emminger at some time that week for an update.

32. On or about May 26, 2023, Defendant's management contacted Plaintiff and expressed their concerns that "since [Plaintiff] was still in the probationary period, we need to move on with the best interest of the company."

33. Plaintiff was then informed that he was being terminated. Defendant's management stated that Plaintiff's recovery time was going to "take too long."

34. While Plaintiff was prepared to obtain any doctor's note requested of him or provide whatever supporting information would be needed for Defendant to engage in the interactive process under the ADA, Defendant did not ask for any further information and instead abruptly terminated Plaintiff's employment.

35. Had Defendant's management expressed their concerns regarding Plaintiff's recovery time and need for accommodations, Plaintiff would have done whatever was necessary to prevent losing his job.

36. Defendant's stated reason for Plaintiff's termination was completely pretextual, as Plaintiff was terminated: (a) approximately fifteen (15) days after Plaintiff began suffering from stroke-like symptoms and associated complications (as explained above); (b) at a time when Plaintiff was confiding in Defendant's management about his disabilities and need for reasonable accommodations; (c) just a few days after requesting a reasonable accommodation of an brief extended medical leave; (d) without any prior warning; and (e) even though Plaintiff had been performing satisfactorily prior to his medical leave.

37. Based upon the foregoing, Plaintiff believes and therefore avers that he was terminated from Defendant in violation of the ADA for discriminatory and retaliatory reasons. Furthermore, Plaintiff was terminated as a direct result of Defendant's failure to engage in the interactive process and failure to accommodate Plaintiff's disabilities.

## Count I
## Violations of the Americans with Disabilities Act, as amended ("ADA")
## ([1] Actual/Perceived/Record of Disability Discrimination; [2] Retaliation and [3] Failure to Accommodate)

38. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

39. Plaintiff suffered from qualifying health conditions under the ADA (as amended), which (at times) affected his ability to perform some daily life activities and substantially limit his major bodily functions – discussed *supra*.

40. Plaintiff requested reasonable accommodations from Defendant including, but not limited to, brief medical leave(s).

41. On or about May 26, 2023, Plaintiff was terminated from his employment with Defendant for the pretextual reasons outlined above.

42. It is believed and therefore averred that Plaintiff was ultimately terminated from Defendant because of: (a) his known and/or perceived disabilities; (b) his record of impairment; and/or (c) because he requested accommodations.

43. Plaintiff also believes and therefore avers that Defendant refused to accommodate his disabilities.

44. These actions as aforesaid constitute violations of the ADA, as amended.

**WHEREFORE**, Plaintiff prays that this Court enter an Order providing that:

A. Defendant is to be prohibited from continuing to maintain their illegal policy, practice or custom of discriminating/retaliating against employees and are to be ordered to promulgate an effective policy against such unlawful acts and to adhere thereto;

B. Defendant is to compensate Plaintiff, reimburse Plaintiff and make Plaintiff whole for any and all pay and benefits Plaintiff would have received had it not been for Defendant's illegal actions, including but not limited to past lost earnings, future lost earnings, salary, pay increases, bonuses, medical and other benefits, training, promotions, pension, and seniority. Plaintiff should be accorded those benefits illegally withheld from the date he first suffered retaliation/discrimination at the hands of Defendant until the date of verdict;

C. Plaintiff is to be awarded liquidated and/or punitive damages, as permitted by applicable law(s) alleged asserted herein, in an amount believed by the Court or trier of fact to be appropriate to punish Defendant for its willful, deliberate, malicious and outrageous conduct and to deter Defendant or other employers from engaging in such misconduct in the future;

D. Plaintiff is to be accorded any and all other equitable and legal relief as the Court deems just, proper and appropriate including for emotional distress;

E. Plaintiff is to be awarded the costs and expenses of this action and reasonable legal fees as provided by applicable federal and state law;

F. Any verdict in favor of Plaintiff is to be molded by the Court to maximize the financial recovery available to Plaintiff in light of the caps on certain damages set forth in applicable federal law; and

G. Plaintiff's claims are to receive a trial by jury to the extent allowed by applicable law. Plaintiff has also endorsed this demand on the caption of this Complaint in accordance with Federal Rule of Civil Procedure 38(b).

Respectfully submitted,

**KARPF, KARPF & CERUTTI, P.C.**

By: ______________________________

Ari R. Karpf, Esq.
3331 Street Rd.
Two Greenwood Square, Suite 128
Bensalem, PA 19020
(215) 639-0801
akarpf@karpf-law.com
*Attorneys for Plaintiff*

Date: April 4, 2024